John F. Golden et al., Complainants, v. John A. Cervenka et al., Defendants.
William C. Niblack, Receiver, Cross-Complainant, v. John F. Golden et al., Defendants.
Central Trust Company of Illinois, Cross-Complainant and Appellant, v. William C. Niblack, Receiver, et al., Defendants and Appellees.

## Gen. No. 24,532.

1. BANKS AND BANKING—*when trust company required to make good its representation that money belonged to bank.* Where a trust company participated with representatives of a bank in illegally obtaining a certificate from the State auditor authorizing the bank to do business, by turning over money to the bank and taking it back immediately after the certificate was issued, it was required to make good its representation that the money belonged to the bank, and the liability of the trust company was not caused by impairment of the capital stock and surplus of the bank, but by the tort of the trust company.

2. BANKS AND BANKING—*when no fraudulent intention exists in trust company's participation with bank in illegally obtaining certificate for bank to do business.* Where a trust company participated with representatives of a bank in illegally obtaining a certificate from the State auditor for the bank to do business, by turning over money to the bank and receiving it back after the certificate was granted, but the entire transaction was known and explained to the representatives of the auditor, there was no fraudulent intention, as the parties thought the law was complied with.

3. BANKS AND BANKING, § 25*—*when purchasers of stock certificates are not liable as stockholders.* Where persons purchased stock certificates in a State bank in due course of business without any knowledge that the capital and surplus had not been fully paid up, they were not liable as stockholders, there being no provision of the banking law nor any other statute rendering them liable.

4. ATTORNEY AND CLIENT, § 61*—*when illegal acts of attorney are not chargeable to clients.* Where stockholders of a national bank authorized a person as attorney to do all necessary acts in perfecting the transfer of their stock for stock in a State bank, they did

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

not authorize the attorney to do anything illegal, and they could not be charged with the attorney's illegal acts.

5. BANKS AND BANKING—*when stockholders of State bank are not in pari delicto with trust company.* Where stockholders of a State bank took no part in an illegal transaction by which a trust company advanced money to the bank so that it might be counted by the State auditor and a certificate to do business issued to the bank, after which the money was returned to the trust company, they were not *in pari delicto* with the trust company.

6. BANKS AND BANKING, § 27*—*when trust company not entitled to reimbursement by stockholders of bank.* Where a trust company advanced money to a bank so that it might secure a certificate to do business, after which the money was returned to the trust company, it did a legal wrong resulting in loss to many depositors and creditors of the bank, and such trust company would not be entitled to be reimbursed by the stockholders for money which it was required to pay, as such a decree would not result in the furtherance of justice, but justice and sound public policy should prevent a recovery so that other persons might be deterred from seeking to evade the banking laws.

Appeal from the Circuit Court of Cook county; the Hon. FREDERICK A. SMITH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Affirmed. Opinion filed January 28, 1920.

H. B. HURD, W. T. ABBOTT and ALBERT FINK, for appellant.

LEVINSON, BECKER, SCHWARTZ & FRANK and KNAPP & CAMPBELL, for appellees Paul W. Cleveland, N. Crandall, Frank Cella, Elmer Wilson, Alfred C. Gary and Henry D. Sturtevant; JEROME N. FRANK, IRWIN T. GILRUTH and JOHN R. COCHRAN, of counsel.

MOSES, ROSENTHAL & KENNEDY, GIBSON, SMITH & PHILLIPS, DELBERT A. CLITHERO and DELAVAN B. COLE, for appellees Joseph Hock, William J. Moxley, Seward M. Gunderson and James E. Bennett; WALTER BACHRACH and HENRY JACKSON DARBY, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

By this appeal the Central Trust Company of Illinois seeks to reverse a decree of the circuit court of Cook county dismissing its cross-bill for want of equity, striking it from the files and denying its motion for a rule on the defendants to answer it.

Another phase of this case was passed upon by the Supreme Court of this State in the case of *Golden v. Cervenka*, 278 Ill. 409, where the facts are fully set forth and therefore will not be repeated here. After the cause was reinstated in the trial court, pursuant to the mandate of the Supreme Court, the Central Trust Company filed its cross-bill making parties defendant all persons who were at any time stockholders of the La Salle Street Trust and Savings Bank and others claiming that "in equity the stockholders of the State Bank ought to make good its capital and surplus and asking that they be required to pay whatever amount the Trust Company should be held liable for, and to thus exonerate it in the premises; and that if prior to such payment on the part of the stockholders, any part of such liability should be satisfied by the Trust Company, the stockholders be required to reimburse the Trust Company therefor."

The Supreme Court, in its opinion, held that the Central Trust Company was liable for the difference between the amount of the capital and surplus of the State Bank, $1,250,000, and the value of the assets of the National Bank at the time these assets were transferred to the State Bank, and directed that the matter be referred to the master to ascertain the amount. Subsequently that matter was referred to the master and is now being heard. It is the position of the Central Trust Company that whatever sum it is required to pay under the decision of the Supreme Court, this payment will be on account of the capital and surplus of the State Bank, and that the primary obligation to pay such capital and surplus is upon the stockholders

of the bank and, therefore, the Central Trust Company should be reimbursed by the stockholders for whatever sum it must finally pay. The difficulty with this argument is that the Supreme Court held that such payment was not payment of the capital or surplus of the State Bank. It there said (p. 443): "The act of the Central Trust Company was not a subscription to the capital stock of the bank or a payment for it."

It further contends that the one thing that fastened liability upon it was that the net assets of the National Bank were not worth $1,250,000. Counsel say: "Laying aside for the moment mere matters of *form*, the one element of the transaction which resulted in fastening liability upon the Trust Company was the *value* of the assets of the National Bank." We think this is unsound. It was not the impairment of the capital stock and surplus of the National Bank that fastened liability on the Central Trust Company. The impairment merely fixed the extent or measure of its liability. Under the decision of the Supreme Court, the liability of the Central Trust Company was based on the fact that it participated with certain representatives of the State Bank in illegally obtaining from the State Auditor his certificate authorizing the State Bank to commence business. The Supreme Court said that the Central Trust Company turned over $1,250,000 to a representative of the State Bank so that he could hand the money over to the auditor to be counted by him and thus obtain the certificate. This was done, and immediately the $1,250,000 was handed back to the Central Trust Company. This the Supreme Court says (p. 426), "amounted to a solemn declaration that the particular money which was there present was the property of the La Salle Street Trust and Savings Bank, dedicated solely to its business, and subject absolutely to its control. The auditor's certificate was based on this representation." Continuing, the court

said (p. 430): "The Central Trust Company having represented that the $1,250,000 exhibited to the auditor's agent was the property of the La Salle Street Trust and Savings Bank, and having immediately taken and retained possession of it to the exclusion of the bank, in an action for an accounting for the benefit of the creditors of the La Salle Street Trust and Savings Bank, it must make good its representation and must account for the money so wrongfully taken by it." From this it is clear that the liability of the Central Trust Company was not caused by the impairment of the capital stock and surplus of the National Bank, but that it was the result of the tort committed by it.

It is stated by counsel for the Central Trust Company that the reason the trial court held its cross-bill insufficient was that it was *in pari delicto* with the stockholders of the State Bank, and it is strenuously insisted that this was erroneous because the Central Trust Company "if *in delicto* at all, was not *in pari delicto*," and in support of this it is argued that the Central Trust Company had no financial or other interest in the matter, that it received no profits out of it, that it was not a stockholder in the State Bank or in the National Bank, that there was substantially no claim that it knew of the impairment of the assets of the National Bank, and that the cross-bill denied knowledge of any such impairment, while on the other hand, the stockholders of the National Bank did know, or were charged by law with knowledge of the impairment of its assets, that all benefits of the transaction accrued to the stockholders of the National Bank, who were the same persons that afterwards became stockholders of the State Bank; that the handing over of the money to be counted and the giving of it back to the Central Trust Company was all done with the knowledge and in the presence of the auditor's representative; that there was no moral turpitude on the part of the representatives of the Central Trust Com-

pany as shown by the opinion of the Supreme Court, and more strikingly by the dissenting opinions of Mr. Chief Justice Craig and Mr. Justice Carter; that in these circumstances, even in equity, a recovery may be had although the transaction is illegal unless it is against public policy; that the question is whether "public policy, which, in the last analysis underlies all legal principles, is better served by granting than by denying relief." Counsel then ask the question "Will public policy be served by denying a recovery in this case?" We think it clear that neither the Central Trust Company nor its officers in the transaction had any idea that they were violating any provision of the law, as it appears that the entire transaction was explained and the facts known to the representative of the auditor's office. In fact, we think that everybody concerned in the matter thought that what they were doing was in substance a compliance with the law. But the Supreme Court said (p. 427): "It is also immaterial whether the Central Trust Company or Dawes had any fraudulent intention, knew anything about the condition of the National Bank, or made any profit out of the transaction." It is to be borne in mind that the cross-bill is brought against "all persons who were at any time stockholders of the State Bank." It appears from the allegations of the cross-bill that there were 21 subscribers to the capital stock and surplus of the State Bank; that afterwards, all of the stockholders of the National Bank except one (some 230 in number) exchanged their stock for a similar number of shares in the State Bank; that subsequently, after the issuance of the stock certificates of the State Bank, other persons purchased the same in due course of business, and there is no averment in the cross-bill that these last-mentioned stockholders at the time they became stockholders in the State Bank knew or had any knowledge that the capital and surplus had not been

fully paid up.  Manifestly, these stockholders were in no way liable.  *McBryan v. Universal Elevator Co.,* 130 Mich. 111.  There is no provision in the banking law of this State, nor any other law so far as we are advised, that would render this class of stockholders in any way liable.  Outside of possibly three or four of the stockholders of the State Bank, the other stockholders knew nothing about the transaction or the method in which it was proposed to be carried out, or the method in which it was actually carried out.  But it is said by counsel for the Central Trust Company that the stockholders were all represented by one Ward as attorney, who was authorized in writing to represent them, and that he knew all of the facts.  It is true that the stockholders of the National. Bank agreed to exchange their stock for an equal number of shares in the State Bank which was to be created and they authorized Ward to perform "all necessary acts in perfecting such transfer."  They did not authorize Ward to do anything illegal, and, if he did, they could not be charged with such illegal act.  We think it clear that the stockholders of the State Bank, except possibly three or four of them, knew nothing of and took no part in the illegal transaction and, therefore, they were not *in pari delicto* with the Central Trust Company.  Moreover, we think no recovery can be had in this case in any event for the reason that, under the law, before the Central Trust Company would be entitled to a decree in its favor it would have to affirmatively appear that such decree would result in furtherance of justice and a sound public policy.  *Dunbar v. American Tel. & Tel. Co.,* 238 Ill. 456; 2 Pomeroy's Eq. Jur. (4th Ed.), secs. 940-941; 1 Cowper's Rep. 341; 1 Story's Eq. Jur. (14th Ed.), sec. 421.  The Central Trust Company in the instant case did (unwittingly) a legal wrong which resulted in a great loss to many depositors and other creditors of the bank and, if it is prevented from recovering in this case, this

404    APPELLATE COURTS OF ILLINOIS.

fact will be a deterrent to other persons who may, in the future, seek to evade the banking laws of this State in the same manner. We think it clear, therefore, that justice and a sound public policy will not be served by allowing a recovery here.

The decree of the circuit court of Cook county is affirmed.

*Affirmed.*