## William C. Niblack, Receiver, Appellant, v. Charles A. Munday et al., Appellees.

## Gen. No. 24,873.

1. BANKS AND BANKING, § 43*—*when receiver cannot recover deficiency from directors.* On a bill by the receiver of a State bank against the directors thereof which seeks to recover the capital and surplus of the bank, where the Supreme Court has held in another case that any deficiency in this regard must be paid by a certain trust company defendant in that case, and the Appellate Court has held in another phase of such case that the trust company cannot recover from subscribers to the stock of the bank any amount that such trust company should be required to pay under the Supreme Court's decision, the receiver cannot recover in such suit against the directors on account of any deficiency in the capital and surplus of the State bank.

2. BANKS AND BANKING, § 43*—*what is extent of director's liability.* The liability of directors of a State bank is not limited to that fixed by section 10 of the State Bank Act (J. & A. ¶ 682), but they are also liable under the common law for losses sustained by the bank as a result of their negligence.

3. RECEIVERS, § 44*—*when court order is not necessary for suit.* If a receiver is authorized generally to sue, it is not necessary in every case to have an order specifically authorizing the bringing of a particular suit.

4. RECEIVERS, § 21*—*when receiver may be controlled by court.* If a receiver improvidently prosecutes a suit, the matter can be brought to the attention of the court appointing him.

5. RECEIVERS, § 43*—*what remedies receiver may use in actions.* A receiver, who represents not only the bank, of which he is the receiver and its stockholders, but also its creditors, in seeking to recover of the fourteen directors moneys alleged to have been lost by the bank through their negligent act, is not restricted to an action at law, but may bring a suit in equity.

6. RECEIVERS, § 42*—*when receiver of bank may sue even though bank is prevented.* The receiver of a bank who represents the creditors as well as the corporation and its stockholders may bring a suit against the directors to recover money of the bank alleged to have been lost through their negligent acts, notwithstanding the bank itself, because of its acquiescence in the acts complained of, could not sue.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Vol. CCXVIII 25

7. BANKS AND BANKING, § 43*—*when action for negligence of directors is premature.* As to claims of creditors which have been filed with the receiver of the bank but not yet allowed, a suit by the receiver against the directors of the bank to recover money of the bank alleged to have been lost through their negligence is premature.

8. BANKS AND BANKING, § 43*—*what is extent of director's liability as to negligence of codirectors.* While a director of a bank may be held liable for damage caused by his own negligence, he cannot be held liable for the negligence of his codirectors or any of them.

9. BANKS AND BANKING, § 43*—*when bill to enforce liability of directors is demurrable.* A bill by the receiver of a bank to recover of the fourteen directors of a bank money of the bank lost through their alleged negligent acts, which charges that the affairs of the bank were managed and conducted by two of the directors, aided by four other directors, the latter being dominated and controlled by such two, and charges against the nonactive defendant directors that they took no part in the management or supervision of the bank and made no investigation or inquiry into its affairs but negligently permitted the two dominant directors to dissipate its assets, falls short of alleging that the losses were caused by the negligence of the nonactive directors and is properly demurrable since it seeks to hold each nonactive director liable not only for his own negligence, but also for that of each of the other nonactive directors.

TAYLOR, J., dissenting.

Appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1919. Affirmed. Opinion filed June 2, 1920. Rehearing denied June 17, 1920.

HIRAM T. GILBERT, for appellant.

RICE, LOWES & O'NEIL, for appellee Thomas McDonald; FRANCIS M. LOWES, of counsel.

MOSES, ROSENTHAL & KENNEDY, C. VAN ALEN SMITH and DELBERT A. CLITHERO, for appellees James E. Bennett, George O. Gunderson and Joseph Hock; WALTER BACHRACH and HENRY JACKSON DARBY, of counsel.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal complainant seeks to reverse a decree of the superior court of Cook county sustaining demurrers to and dismissing for want of equity his amended bill of complaint. Complainant, as receiver of the La Salle Street Trust and Savings Bank, sought to recover moneys lost by the bank through the alleged negligent acts of defendants who were its directors. The only question to be determined is whether the amended bill stated a cause of action.

It is alleged that the La Salle Street National Bank of Chicago was organized May 7, 1910, with a capital and surplus of $1,250,000; that thereafter it carried on a banking business in Chicago until its dissolution, October 21, 1912; that for 6 months before it ceased doing business its capital stock and surplus had been entirely lost, and that its liabilities exceeded its assets by at least $200,000. The bill then sets up the organization of the La Salle Street Trust & Savings Bank and the taking over by it of the assets and liabilities of the national bank. These facts are stated in the bill substantially as found by the Supreme Court in the case of *Golden v. Cervenka,* 278 Ill. 419, so that it will be unnecessary to restate them here at large. For the purposes of this opinion it is sufficient to say that the amended bill of complaint alleges that the Trust and Savings Bank was organized and began doing business October 21, 1912, and continued to so operate until June 10, 1914, when complainant was appointed receiver by the circuit court of Cook county in a bill filed in the name of the People of the State of Illinois on the relation of the Auditor of Public Accounts against the Trust and Savings Bank and its stockholders; that the bank was dissolved and the receiver ordered and directed to wind up its affairs, collect and distribute its assets among the parties entitled thereto. It is alleged that the by-

laws of the Trust and Savings Bank provided that the affairs of the bank be administered by a board of fifteen directors, five of whom should constitute a quorum for the transaction of business; that the business of the bank was managed and conducted entirely by William Lorimer, its president, and Charles B. Munday, its vice president, aided by Charles G. Fox, Thomas McDonald, Charles E. Ward, and L. L. Bacchus; that Fox, McDonald, Ward and Bacchus were dominated and wholly controlled by Lorimer and Munday, all of whom were directors of the bank; that Bennett, Hock, Gunderson, Hanecy, Hanney and Huttig, who were also directors "took no part in the management or supervision of said business and made no investigation or inquiry whatsoever into the same, but carelessly and negligently permitted the said William Lorimer and Charles B. Munday, without any supervision whatever, or attempted supervision, or investigation or inquiry, or attempt at investigation or inquiry, by the other members of the said board of directors, or either of them, to carry on the said business and to fraudulently misapply the assets of said Trust and Savings Bank and to cause great losses to said Trust and Savings Bank" by failing to exercise ordinary care in the management and supervision of the business of the bank, and particularly in permitting Lorimer and Munday to make loans of the bank's money aggregating $1,781,722.43, to individuals, firms and corporations who were insolvent; that such loans were unsafe and imprudent transactions; that moneys of the bank aggregating $562,735 were invested in stocks, bonds and other securities which, at the respective times the investments were made, were of little or no value as Lorimer and Munday well knew, and are now worthless; that there came into the possession of the bank through Munday certain items which were designated "transit items"; that these items, amounting to $311,200, for which the bank's

money was paid out, were uncollectible and worthless; that all of these transactions were unsafe and imprudent as well known to Lorimer and Munday "and all of which was known to the other defendants, or would have been known to them had they exercised ordinary care and diligence in the performance of their duties as directors." It is further alleged that long prior to the times when Munday obtained the bank's money for the transit items, the other directors well knew, or by the exercise of ordinary care should have known, that Munday was fraudulently misapplying the money and property of the bank to his own use and that he was then insolvent and unfit to be trusted with the management, and business of the bank, but that notwithstanding such knowledge, or means of knowledge, the other directors carelessly and negligently permitted him to continue to have the management of the bank and to fraudulently misapply its moneys until the bank suspended. It is also alleged that claims aggregating $3,450,000, have been presented to the receiver, and that of such claims more than $2,700,000 have been allowed. The bill further sets up orders entered by the circuit court in the proceeding in which complainant was appointed receiver, wherein complainant was authorized and empowered "to institute and prosecute, either in the name of the said Trust & Savings Bank or in his own name as such receiver, any and all suits at law and in equity which he may deem necessary or advisable for the collection of moneys now due or which may hereafter become due said La Salle Street Trust and Savings Bank, or for the recovery of other property belonging thereto, or otherwise protecting the rights of said La Salle Street Trust & Savings Bank"; that the assets of the bank be converted into money and after the payment of costs and expenses distributed among the creditors of the bank, and if any sum remain, that it be distributed among the stockholders;

that the receiver be directed with all convenient speed to convert into money the property and assets of the bank, "to make such sales of such property and assets as may from time to time be authorized by the court, and to institute and prosecute in his own name as receiver, or otherwise, all such suits and proceedings either at law or in equity as he may deem necessary, proper or advisable for the collection of money now due or which may hereafter become due" the bank.

From a consideration of the allegations of the amended bill, we think it clear that the most that can be said as to the nonactive director defendants, Bennett, Gunderson, Magner, Hock, Gardner, Hanecy, Hanney and Huttig, is that they were charged only with negligence and inattention to their duties as directors, for it is alleged that they carelessly and negligently permitted Lorimer and Munday, without any supervision, investigation or inquiry, to misapply the assets of the bank.

Counsel for complainant does not argue that the bill stated a good cause of action at least against Lorimer and Munday and, therefore, their demurrer should not have been sustained even if the demurrers of the nonactive directors were properly sustained. But he argues the case on the theory that he has stated a good cause of action against all of the defendants, and that if this is not true the amended bill was properly dismissed. We shall, therefore, consider the case only as against the nonactive directors. We think it clear from a consideration of the allegations that complainant in the instant case is seeking to recover the capital and surplus of the state bank amounting to $1,250,000. The Supreme Court in *Golden v. Cervenka, supra,* held that any deficiency in this regard must be paid by the Central Trust Company of Illinois, and we held in another phase of the same case (*Golden v. Cervenka,* 216 Ill. App. 397)

that the Central Trust Company could not recover from the stock subscribers of the Trust & Savings Bank any amount that it, the Central Trust Company, should be required to pay under the decision of the Supreme Court. It follows, therefore, that complainant would not be entitled to recover in this case on account of any deficiency in the capital and surplus of the Trust & Savings Bank.

The defendants first contend that the amended bill was properly dismissed for the reason that complainant cannot maintain any suit against the directors of such bank on account of their negligence because the State Bank Act covers the entire subject-matter, and the only liability of State bank directors is that fixed by section 10 of that Act (sec. 10, ch. 16a, Rev. St., J. & A. ¶ 682), which provides that the total liability of any person or corporation to any State bank for any money borrowed shall at no time exceed 15 per cent of the capital stock of the bank; that every director who violates the law or who participates in or assents to such violation, or who permits any officer or agent of the bank to violate such law, shall be personally liable for all damage to the bank in consequence of such violation. In support of this, it is argued that under section 5, article XI of the Constitution, no act of the General Assembly, or amendments thereto, concerning State banks shall go into effect unless the same is approved by a vote of the people and, therefore, the defendant directors are not liable under the common law or rules of equity but under the statute only. We think the argument is untenable and are clearly of the opinion that the directors of a bank are liable under the common law for losses sustained by the bank as the result of their negligence. *Wallach v. Billings,* 277 Ill. 218; *Briggs v. Spaulding,* 141 U. S. 132. In the *Billings* case the court was considering the liability of Billings as a director of a national bank by reason of his negligence and inat-

tention to the affairs of the bank. The court said (p. 233): ''Liability of directors of a bank for losses to the bank, so far as any rule can be deduced from the various authorities and based on the facts of individual cases outside the question of proper parties, can be stated as follows: Where the directors of a corporation are guilty of a breach or neglect of duty and the proximate result of such breach or neglect of duty is a loss to the bank, there may be a recovery from such directors.'' In the *Spaulding* case the Supreme Court of the United States said (p. 165): ''We hold that directors must exercise ordinary care and prudence in the administration of the affairs of a bank, and that this includes something more than officiating as figure-heads. They are entitled under the law to commit the banking business, as defined, to their duly authorized officers, but this does not absolve them from the duty of reasonable supervision, nor ought they to be permitted to be shielded from liability because of want of knowledge of wrong-doing, if that ignorance is the result of gross inattention.'' There is nothing in the State Bank Act so at variance with the provisions of the National Banking Act that would render these authorities inapplicable here.

It is further argued that the orders entered by the circuit court in which the receiver was appointed did not direct him to institute this suit against the directors, and that the receiver can only bring such suits as he is authorized to do, and there being no authority for the bringing of this suit, the bill was properly dismissed. It is true that the order authorized the receiver to bring such suits as he may deem advisable for the collection of money, and while the case of *Simmons v. Taylor,* 106 Tenn. 729, holds that the absence of an allegation that the receiver has been authorized to institute the suit may be taken advantage of by demurrer, we think it is not necessary in every case to have an order specifically authorizing

the bringing of a particular suit. It is sufficient if the receiver be authorized generally. At least we hold in this case that if the receiver is improvidently prosecuting this suit, the matter can be brought to the attention of the court appointing him. And that the order of the circuit court is not void.

It is further contended that if there is any liability, complainant's remedy is at law and not in equity. In support of this a number of New York authorities are cited, among them the case of *Dykman v. Keeney,* 154 N. Y. 483. We think that case and the other New York authorities are in point and sustain defendant's position, but we are of the opinion that the instant case is clearly one of equitable cognizance. The rule relating to equitable jurisdiction applicable here is laid down by Pomeroy as follows: "Where one party has a common right against a number of persons, the establishment of which would regularly require a separate action brought by him against each of these persons, instead whereof he might procure the whole to be determined in one suit, a bill in equity will lie on the ground that it prevents a multiplicity of suits." 1 Pomeroy, Equity Juris. (2nd Ed.), sec. 245. See also *Briggs v. Spaulding, supra.* Complainant would certainly have no adequate remedy if he were required to commence a separate action at law against each of the fourteen directors, and to offer substantially the same evidence in each case. This is particularly true for the further reason that our Supreme Court has held in the case of *Golden v. Cervenka, supra,* that the receiver represents not only the corporation and its stockholders but also its creditors.

It is also argued that the receiver can only maintain such actions as the bank itself could since he represents the bank, and that the bank could not maintain the instant case because it has "acquiesced in the transactions complained of." It is sufficient to say that the *Golden* case, followed by the case of *Niblack*

*v. Farley,* 286 Ill. 536, held that although the circumstances of the particular case may be such that the bank itself could not have collected certain securities, yet the receiver representing the creditors might do so.

A further point made is that there are filed with the receiver claims aggregating about $700,000 which have not as yet been allowed. As to such claims we think the suit was premature. *Green v. Officers and Directors of Knoxville Banking & Trust Co.,* 133 Tenn. 609.

The principal point in the case, however, is that no cause of action is stated against the nonactive directors for the reason that there is no allegation that any of the losses sustained by the bank, and for which recovery is now sought, resulted from the negligence of such directors. In the *Billings* case it was held that while a director of a bank may be liable for damage occasioned by his own negligence, yet he cannot be held for the negligence of his codirectors or any of them. *Warner v. Penoyer,* 91 Fed. 587, which was a suit by the receiver of a bank, against its directors to charge them with liability for losses alleged to have been caused by their negligence, was quoted with approval by our Supreme Court in the *Billings* case as follows: "They (the directors) are responsible for their own acts or omissions, but not for those of codirectors in which they have not actively or passively participated. * * * As to all these losses, the case of the complainant seems to have been prepared and presented upon the theory that when a bank has failed and it appears that there was a general supineness and looseness of management by the directors, the burden of exoneration for the losses is on the directors. This is not a correct theory. If it were, the cases would be few in which the directors of a bank wrecked by the misconduct of a cashier could not be held accountable for all the losses. The court cannot decree upon conjecture. As against two of the directors, the case for the complainant is predicated

upon their failure to attend the semiannual meetings of the board. It is not a necessary or legitimate inference that this omission was a contributory cause of the losses. It does not follow because a director has failed to attend meetings that he is legally or morally responsible for the disasters that may have befallen his bank. * * * A director who has failed to act is not liable for the thefts or shortcomings of the cashier unless it appears, inferentially at least, that his omission had some proximate relation to the losses." The Supreme Court there continuing said (p. 233): "It is the theory of appellants, in brief, that all that it is necessary to show in their bill of complaint is the inattention of Billings as a director and that the bank sustained losses. There is no doubt but that directors of a national bank are liable in some cases for losses to the bank of which they are directors, but it is equally true that they are not liable for every loss which happens to occur. Such a rule would make a bank director an insurer, which he is not. A director may be guilty of negligent acts which cause a loss or he may be guilty of negligence and inattention to his duties provided such negligence and inattention are the cause of such loss. * * * There are many cases in which directors have been held liable, and many others in which they have been held not to be liable. Decisions of the courts are not of great value as authorities, as each decision is based upon the facts of the particular case decided, and in no two cases are the facts the same. * * * They have not shown by the bill that the losses were caused by the alleged neglect and no such case is made out by their bill." In that case Billings, who was a director of a national bank, attended no meetings of the directors, nor did he do anything in any way connected with the management of the bank, and it was there held that he was not liable for losses sustained by the bank through his negligence and inattention

to duty, for the reason that there was no allegation in the bill that the losses were suffered as a result of his inattention to duty. In the instant case the charge is that the affairs of the bank were managed and conducted by Lorimer and Munday, aided by Fox, McDonald, Ward and Bacchus, the latter four being dominated and wholly controlled by Lorimer and Munday. The charge against the nonactive defendant directors is that they took no part in the management or supervision of the bank, made no investigation or inquiry into its affairs, but negligently permitted Lorimer and Munday to dissipate the assets. We think the bill, like the one in the *Billings* case, falls short of an allegation that the losses were caused by the negligence of the nonactive directors. For, even if one of the nonactive directors had attended the meetings of the board, he could not have prevented the worthless loans from being made, as he would have been outvoted by Lorimer and Munday and the other four directors dominated by them.

It is apparent, therefore, that complainant is seeking to hold each nonactive director liable not only for his own alleged negligence, but also for that of each of the other nonactive directors, which cannot be done. The demurrers were properly sustained and the bill dismissed.

The decree of the superior court of Cook county is affirmed.

*Affirmed.*

THOMSON, P. J., concurs.
TAYLOR, J., dissents.